**Charles David CONNOLLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–97–00182–CR.**

Court of Appeals of Texas,
Austin.

Oct. 9, 1997.

Opinion on Overruling of Rehearing
Nov. 6, 1997.

---

James H. Kreimeyer, Belton, for Appellant.

Arthur Cappy Eads, District Attorney, James T. Russell, Administrative Assistant, Belton, for Apellee.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The district court found Charles David Connolly violated the terms of his deferred adjudication community supervision, adjudged him guilty of theft, and sentenced him to two years of confinement in the Institutional Division of the Texas Department of Justice. Connolly appeals the judgment, claiming in part that the district court erred in denying his motion to dismiss the State's motion to revoke community supervision and proceed to adjudication of guilt. Because we find the State failed to present sufficient evidence of due diligence in apprehending Connolly after expiration of his supervisory term, we will reverse the district court's adjudication of guilt and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

After finding that the evidence substantiated Connolly's guilt of theft, the district court on November 8, 1990, deferred adjudication and placed him on five years of community

supervision. The district court ordered Connolly to report to his supervision officer monthly and to pay $6,347.95 in restitution, $109.50 in court costs and $40 per month in supervisory fees to the Adult Probation Department of Bell County.

On March 16, 1995, the State filed a motion to revoke supervision and adjudicate guilt because Connolly had missed numerous meetings with his supervision officer and was delinquent on his restitution payments, court costs and supervisory fees. The State filed a capias on the same day. On Nov. 1, 1995, just one week before Connolly's supervision expired, the State filed an amended motion to revoke, revising the amount owed and number of meetings missed. The State filed an amended capias on the same day.

A Bell County sheriff's deputy executed the capias on March 19, 1996, more than one year after the State filed the first motion to revoke and more than four months after expiration of Connolly's supervisory term. At the revocation hearing on February 6, 1997,[1] Connolly moved to dismiss the motion to revoke, claiming the State had failed to exercise due diligence in apprehending him. Although Bell County Community Supervision Officer Wayne Smith testified at the hearing that a letter was sent to Connolly's listed address on May 25, 1995, informing him that he was delinquent under the terms of his supervision, there is no evidence in the record that the State had tried to arrest Connolly before March 19, 1996. Nor is there evidence in the record that Bell County deputies had tried and been unable to locate him. Nevertheless, on February 19, 1997, the district court proceeded to an adjudication of guilt after finding Connolly had violated his supervision.

## DISCUSSION

In his first point of error, Connolly alleges the trial court erred in denying his motion to dismiss the motion to revoke supervision and adjudicate guilt because the State failed to present sufficient evidence of due diligence in apprehending him after his supervisory term had expired. In his second point of error, Connolly asserts the trial court erred in making assumptions about due diligence without evidentiary support. Because both points allege insufficient evidence to support the trial court's finding of due diligence, we will address them together.

After granting deferred adjudication supervision under Tex.Code Crim. Proc. Ann. art. 42.12, § 5 (West Supp.1997), a trial court may revoke the supervision and adjudicate guilt *after* expiration of the term as long as the motion alleging a violation "is filed and a capias or arrest warrant is issued prior to the expiration of the term, followed by due diligence to apprehend the probationer and to hear and determine the allegations in the motion." *Prior v. State,* 795 S.W.2d 179, 184 (Tex.Crim.App.1990);[2] *see also Shahan v. State,* 792 S.W.2d 101, 102–03 (Tex.Crim.App. 1990); *Langston v. State,* 800 S.W.2d 553, 554 (Tex.Crim.App.1990); *Stover v. State,* 365 S.W.2d 808, 809 (Tex.Crim.App.1963). A defendant must raise the issue of lack of due diligence either before or during the revocation hearing; otherwise, error is not preserved. *See Prior,* 795 S.W.2d at 185. Once the defendant raises the issue, the State has the burden of showing due diligence by a preponderance of the evidence. *See Burch v. State,* 821 S.W.2d 385, 387 (Tex.App.—Waco 1991, no pet.); *see also Shaw v. State,* 622 S.W.2d 862, 863 (Tex.Crim.App.1981) (holding standard of proof in probation revocation hearing is preponderance of the evidence).[3]

---

1. Please note that the clerk's record indicates the revocation hearing and rendering of judgment occurred in February 1997; however, the reporter's record and the parties' briefs indicate these events occurred in April. Because all file-marked documents in the clerk's record are consistent with the February dates, we will assume that the February dates are correct. Regardless, the inconsistency does not affect our legal analysis.

2. In *Prior,* the relevant statutory provision was Tex.Code Crim. Proc. Ann. art. 42.12, § 3d (West 1979), but the Texas Legislature amended and renumbered art. 42.12; therefore, the former § 3d is now Tex.Code Crim. Proc. Ann. art. 42.12, § 5 (West Supp.1997).

3. Under *Prior,* a defendant may raise the due diligence issue even though no appeal may be taken from the decision to proceed to adjudication. *Prior,* 795 S.W.2d at 184–85; *see* Tex.Code of Crim. Proc. Ann. art. 42.12, § 5(b); *see also*

In *Langston,* the court held that the State had failed to present sufficient evidence of due diligence in apprehending the probationer after expiration of the probationary term. *Langston,* 800 S.W.2d at 555. The probationer was arrested eight months after the motion to revoke probation had been filed and seven and a half months after expiration of the probationary period. *Id.* at 554. In reaching its holding, the court noted that after the probationer properly raised the issue of due diligence at the revocation hearing, the State offered no explanation for the lapse of seven and a half months, and there was no evidence the probationer was in hiding after expiration of the term. Because the State had failed to meet its burden of showing due diligence in apprehending the probationer, the court reversed the trial court's adjudication of guilt. *Id.*

■ We find *Langston* analogous to this case. Like the probationer in *Langston,* Connolly properly raised the issue of due diligence at his revocation hearing. As in *Langston,* the State has offered no explanation for the delay, and there is no evidence that the defendant was hiding after expiration of the term. *Langston* involved a lapse of seven and a half months; Connolly was arrested approximately four and a half months after his supervisory term had expired. Nonetheless, no precedent suggests that a shorter lapse shifts the burden of proof: Once the term has expired and the defendant properly raises the issue, the State bears the burden to establish due diligence.

In this case, the only evidence of due diligence the State presented was testimony by Community Supervision Officer Smith about a letter that Bell County tried to send Connolly on May 25, 1995. Furthermore, without any evidentiary support, the district court concluded that the Bell County sheriff must have tried to arrest Connolly before March 19, 1997, because it was the sheriff's duty to do so. In fact, in ruling against the defendant, the court explicitly recognized

*Langston,* 800 S.W.2d at 554–55 (applying *Prior*).

**4.** In light of the foregoing analysis, we need not address Connolly's third point of error, which

that it was basing its holding in part on an "assumption" that the Bell County sheriff had attempted to apprehend Connolly. In effect, the district court's assumption shifted the burden to Connolly to show lack of due diligence. Well-established authority dictates that the State bears the burden of showing due diligence. *See, e.g., Prior,* 795 S.W.2d at 184; *Shahan,* 792 S.W.2d at 102–03; *Langston,* 800 S.W.2d at 554; *Stover,* 365 S.W.2d at 809.

Because the State failed to show by a preponderance of the evidence that Bell County sheriff's deputies exercised due diligence in attempting to apprehend Connolly, we hold the district court abused its discretion in revoking Connolly's supervision and adjudicating guilt after the supervisory term had ended. We sustain points of error one and two .[4]

## CONCLUSION

We reverse the district court's adjudication of guilt and remand the cause with instructions to dismiss the motion to revoke and proceed to adjudication and for further proceedings consistent with this opinion.

Reversed and Remanded.

## ON STATE'S MOTION FOR REHEARING

In its motion for rehearing, the State first complains that we failed to address its contention that the question of due diligence cannot be applied under article 42.12, section 5(b) of the Code of Criminal Procedure. Tex.Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp.1997). In fact, we stated in footnote three that "a defendant may raise the due diligence issue even though no appeal may be taken from the decision to proceed to adjudication." We therefore turn to the State's second complaint, which is that the authorities on which we relied in making the quoted statement have been disapproved.

In *Prior v. State,* 795 S.W.2d 179, 184 (Tex.Crim.App.1990), the court of criminal

claims the district court erred in assessing a punishment of two years in the institutional division without first entering an oral finding of guilt.

appeals held that a trial court may revoke deferred adjudication probation and adjudicate guilt after the probationary term has expired if: (1) the motion to revoke probation is filed before the probationary term expires, (2) the capias issues before the probationary term expires, and (3) the State uses due diligence to apprehend the probationer and to determine the allegations in the motion to revoke. In *Prior*, the court did not reach the due diligence question because the defendant did not raise the issue in the trial court.

In *Langston v. State*, 800 S.W.2d 553 (Tex. Crim.App.1990), the court of criminal appeals reaffirmed the holding in *Prior*. Moreover, because the defendant had raised the due diligence issue at the hearing on the motion to revoke and adjudicate, the court reviewed the evidence regarding the State's diligence and concluded that due diligence was not shown. For that reason, the judgment of conviction was reversed.

The State contends that the court of criminal appeals disavowed *Prior* and *Langston* in its opinion in *Harris v. State*, 843 S.W.2d 34 (Tex.Crim.App.1992). In *Harris*, the court held that a trial court's jurisdiction to revoke probation after the expiration of the probationary term is invoked by the timely filing of the motion to revoke and issuance of the capias. The due diligence element is not jurisdictional, but is in the nature of a plea in bar or defense that must be raised by the probationer. *Id.* at 35–36 n. 1. The *Harris* opinion disapproved certain language employed in *Prior*, *Langston*, and other opinions, but did not alter the fundamental holdings of those opinions. In fact, the language in *Harris* on which the State relies is entirely consistent with the results and reasoning in *Prior* and *Langston*.

Article 42.12, section 5(b) states that no appeal may be taken from the trial court's determination to proceed to adjudication. The State believes that this statutory limitation on the right to appeal from the adjudication decision bars our consideration of appellant's contention that due diligence was not shown in this cause. The court of criminal appeals, however, clearly did consider the due diligence issue in *Prior* and *Langston*, and in the latter case reversed the conviction

after concluding that due diligence was not shown. While the court did not explain in either opinion why consideration of the due diligence issue was not foreclosed by the statutory prohibition on appeal, the court's past actions are plainly inconsistent with the State's contention that the due diligence question is not appealable in a deferred adjudication case. As an intermediate appellate court, we are bound to follow the example of the court of criminal appeals.

■ Appellate review of the due diligence question is not necessarily inconsistent with the language of section 5(b). The "determination" from which no appeal may be taken is the determination to revoke probation and adjudicate guilt on the ground or grounds alleged in the State's motion. If the adjudication hearing is held after the probationary term has expired and if the defendant raises the due diligence issue, the trial court must decide the question before addressing the merits of the State's motion to revoke and adjudicate. If due diligence is not shown, the trial court should dismiss the State's motion without reaching the merits. *See Langston*, 800 S.W.2d at 555 ("Absent due diligence by the State in apprehending appellant, the motion to dismiss [the motion to revoke and adjudicate] should have been granted.").

As in *Langston*, the lack of due diligence defense was raised by Connolly in the district court at the hearing on the State's motion to revoke probation and proceed to adjudication. As did the court of criminal appeals in *Langston*, we conclude that the State failed to show that it used due diligence to apprehend appellant and to determine the allegations in the motion before the probationary term expired. Therefore, as did the court of criminal appeals in *Langston*, we reverse the district court's judgment of conviction.

The State's motion for rehearing is overruled.